# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TRACIE O.[1],

               Plaintiff,

    v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

CIVIL ACTION NO. 3:23-CV-01861

(LATELLA, M.J.)

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Tracie O.'s claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. 11 at 2). Both parties have consented to a Magistrate Judge conducting all proceedings in the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano, Commissioner of Social Security*, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

case. (Doc. 5). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs as well as a review of the record, the Commissioner's decision will be vacated and remanded to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence.

## 1. BACKGROUND AND PROCEDURAL HISTORY

On January 31, 2018, Plaintiff Tracie O. ("Ms. O.") filed an application for Title II benefits. (Doc. 11 at 2; Doc. 7-3 at 38). In this application, Ms. O. claimed disability beginning October 28, 2016. (*Id*.). The Social Security Administration initially denied Ms. O.'s claims on July 17, 2018. (Doc. 7-4 at 5-9). Ms. O. filed a request for a hearing before an Administrative Law Judge ("ALJ") on August 2, 2018. (Doc. 7-4 at 10-11). An ALJ conducted a hearing on February 4, 2020. (Doc. 7-2 at 26-72).

In a written opinion dated March 16, 2020, the ALJ determined that Ms. O. is not disabled and therefore not entitled to the benefits sought. (Doc. 7-2 at 21-39). Ms. O. appealed the ALJ's decision to the Appeals Council, who, on April 22, 2021, denied Ms. O.'s request for review. (Doc. 7-2 at 2-8.). Ms. O. then filed a prior civil action in this Court docketed to Civil Number 4:21-CV-1077, resulting in the Court remanding her case for a new hearing. (Doc. 8-1 at 65). The Appeals Council issued a remand order on November 17, 2022. (*Id*.). A second hearing

2

was held on May 9, 2023.  (*Id*.; Doc. 8 at 32-54).  On July 27, 2023, the ALJ

issued a decision again finding that Plaintiff was not disabled.  (Doc. 8 at 2-24).

The Appeals Council did not review that decision, and so, it became the final

decision of the Commissioner on October 1, 2023.

Plaintiff commenced this action on November 9, 2023.  (Doc. 1).  The

Commissioner responded on January 4, 2024, and provided the requisite transcripts

from the disability proceedings.  (Docs. 6, 7, 8).  The parties then filed their

respective briefs (Doc. 11; Doc. 13; Doc. 16), with Ms. O. alleging four errors

warranting reversal or remand.  (Doc. 11, at 4-5).

## 2. THE ALJ'S DECISION

In a decision dated August 1, 2023, the ALJ determined Ms. O. "has not

been under a disability, as defined in the Social Security Act, from October 28,

2016, through June 30, 2018, the date last insured." (Doc. 8 at 24).  The ALJ

reached this conclusion after proceeding through the five-step sequential analysis

required by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The ALJ

determined that Ms. O. met the insured status requirements of the Social Security

Act through June 30, 2018.  (*Id*. at 8).

At step one, an ALJ must determine whether the claimant is engaging in

substantial gainful activity ("SGA").  20 C.F.R § 404.1520(a)(4)(i).  If a claimant

is engaging in SGA, the Regulations deem them not disabled, regardless of age,

education, or work experience.  20 C.F.R. § 404.1520(b).  SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit.  20 C.F.R. § 404.1572.  In making this determination, the ALJ must consider only the earnings of the claimant.  20 C.F.R. § 404.1574.  The ALJ determined Ms. O. "did not engage in substantial gainful activity during the period from her alleged onset date of October 28, 2016, through her date last insured of June 30, 2018."  (*Id.*).  Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled."  20 C.F.R. § 404.1520(c).  If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Ms. O. has the following severe impairments:

> status post greater saphenous ablation(s) secondary to varicose veins, fibromyalgia, adhesive capsulitis of the left arm, osteoarthritis of the acromioclavicular joint with tendonitis, chronic obstructive pulmonary disorder (COPD), bilateral carpal tunnel syndrome, degenerative disc disease, obesity, major depressive disorder, a mood

4

> disorder, bipolar disorder, a generalized anxiety disorder,
> and post traumatic stress disorder (PTSD).

(Doc. 8 at 8). The ALJ also identified Ms. O.'s non-severe impairments as:

hypothyroidism status post thyroidectomy in 2014, osteopenia, vertigo,

dermatitis, and sleep apnea.  (*Id*. at 8).

At step three, the ALJ must determine whether the severe impairment or

combination of impairments meets or equals the medical equivalent of an

impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§

404.1520(d); 404.1525; 404.1526).  If the ALJ determines that the claimant's

impairments meet these listings, then the claimant is considered disabled. 20

C.F.R. § 404.1520(a)(4)(iii).  The ALJ determined that none of Ms. O.'s

impairments, considered individually or in combination, met or equaled a Listing.

(Doc. 8 at 9).  Specifically, the ALJ considered Listings: 1.15 regarding disorders

of the skeletal spine resulting in compromise of the nerve root; 1.18 regarding

abnormality of a major joint in any extremity, 3.02 regarding chronic respiratory

disorders, 4.00 *et al.* regarding the cardiovascular system including 4.11, chronic

veinous insufficiency and 4.12, peripheral artery disease; 11.14 regarding carpal

tunnel syndrome; 12.04 regarding depressive and bipolar-related disorders; 12.06

regarding anxiety and obsessive compulsive disorders, and 12.15 regarding trauma

and stressor-related disorders.  (Doc. 8 at 9-10).

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. The ALJ determined that Ms. O.:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can stand and walk in accordance with the light level but with intervals of standing limited to two (2) hours each time, with the ability to sit for a period of time that does not exceed a half hour each time, and the individual would not be off task when transferring. The claimant can frequently push and pull with the upper extremities, occasionally reach overhead with the upper extremities, frequently handle bilaterally for gross and fine manipulation, and occasionally push and pull with the lower extremities, including foot controls. She can frequently balance, occasionally stoop, crouch, crawl, kneel, and climb, but never climb on ladders, ropes, or scaffolds. The claimant can tolerate frequent exposure to temperature extremes of cold, wetness, humidity, vibrations, fumes, odors, dusts, gases, and poor ventilation, as well as hazards, including moving machinery and unprotected heights. She can perform simple and routine but not complex tasks, in a low stress environment, which is defined as involving only occasional decision making and occasional changes in work setting. The claimant can tolerate frequent interactions with coworkers and supervisors, and occasional interaction with the public.

(Doc. 8 at 13).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can

still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined Ms. O. is unable to perform past relevant work. (Doc. 8 at 22). The ALJ noted past relevant work as a home health aide and a housekeeper, but the exertional requirements of each exceeded Ms. O.'s RFC. (Doc. 8 at 22).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ made vocational determinations that Ms. O. was 50 years old on the alleged onset date, defined as an individual closely approaching advanced age by the Regulations. 20 C.F.R. § 404.1563. (Doc. 8 at 23). The ALJ also noted that Ms. O. "has at least a high school education" as considered in 20 C.F.R. §

404.1564.  (Doc. 8 at 22).  The ALJ determined that upon consideration of these factors, Ms. O.'s RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (Doc. 8 at 22). The ALJ specifically identified occupations of marker, non-postal mail clerk, and laundry.  (*Id*. at 23).

As a result of this analysis, the ALJ determined that Ms. O. was not disabled and denied her applications for benefits.  (*Id*. at 24).

### 3. STANDARD OF REVIEW

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).  Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits.  42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

8

In evaluating whether a claimant is disabled as defined in the Social Security
Act, the Commissioner follows a five-step sequential evaluation process.  20
C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).  Under this process, the
Commissioner must determine, in sequence: (1) whether the claimant is engaged in
substantial gainful activity; (2) whether the claimant has a severe impairment; (3)
whether the claimant's impairment meets or equals a listed impairment; (4) whether
the claimant is able to do past relevant work, considering his or her residual
functional capacity ("RFC"); and (5) whether the claimant is able to do any other
work that exists in significant numbers in the national economy, considering his or
her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a); 20
C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a
medically determinable impairment that prevents him or her from doing past
relevant work.  20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a).  Once the
claimant has established at step four that he or she cannot do past relevant work,
the burden then shifts to the Commissioner at step five to show that jobs exist in
significant numbers in the national economy that the claimant could perform that
are consistent with his or her RFC, age, education, and past work experience.  20
C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's
application for benefits, the Court's review is limited to determining whether the

findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Ms. O. is disabled, but whether

the Commissioner's finding that Ms. O. is not disabled is supported by substantial

evidence and was reached based upon a correct application of the relevant

law.  *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.

Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of

substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa.

1981) ("The [Commissioner]'s determination as to the status of a claim requires the

correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d

675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is

plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court

has plenary review of all legal issues decided by the Commissioner.").

## 4. DISCUSSION

### 1. Errors Alleged by Plaintiff

Plaintiff alleges four errors which require remand.  First, she argues that the

ALJ found the opinion of the treating physician not persuasive for erroneous

reasons.  (Doc. 11 at 4).  Second, she asserts that the ALJ found the opinion of the

consultative physician only somewhat persuasive for erroneous reasons.  (*Id*.).

Next, she claims that "the ALJ provided no reasonable explanation for finding

Plaintiff able to perform light work when a prior ALJ found her limited to

sedentary work, and erred by failing to find her disabled pursuant to the Medical

Vocational Guidelines.  (*Id*.).  Finally, Plaintiff asserts that "the ALJ failed to

11

present a hypothetical question containing all of Plaintiff's credibly established

limitations to the Vocational Expert, whose testimony thus did not constitute

substantial evidence supporting the decision." (*Id*. at 4-5). We begin our

discussion by setting forth the legal framework for the evaluation of medical

opinions.

## 2. Legal Framework for Evaluation of Medical Opinions

Ms. O. filed her disability application on January 31, 2018, after the Social

Security Regulations regarding consideration of medical opinion evidence were

amended. Prior to March of 2017, the regulations established a hierarchy of

medical opinions, deeming treating sources to be the gold standard. *See Alexandre*

*v. Bisignano*, No. 1:24-CV-1785, 2025 WL 2045186, at *7 (M.D. Pa. July 21,

2025). However, in March of 2017, the regulations governing the treatment of

medical opinions were amended. *Id*. Under the amended regulations, ALJs are to

consider several factors to determine the persuasiveness of a medical opinion:

supportability, consistency, relationship with the claimant, specialization, and other

factors tending to support or contradict a medical opinion. *Id*. (citing 20 C.F.R. §

404.1520c(c)). The change to the consideration of medical opinion evidence has

been summarized as follows:

> The regulations regarding the evaluation of medical
> evidence have been amended for claims filed after March
> 27, 2017, and several of the prior Social Security

Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id. at §§* 404.1520c(c)(1), 416.920c(c)(1). The regulations provide

> that with respect to "consistency," "[t]he more consistent
> a medical opinion(s) or prior administrative medical
> finding(s) is with the evidence from other medical
> sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative
> medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2),
> 416.920c(c)(2).
>
> Under the new regulations an ALJ must consider, but
> need not explicitly discuss, the three remaining factors in
> determining the persuasiveness of a medical source's
> opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

*Fallin v. Bisignano*, No. 4:24-CV-180, 2025 WL 1749654, at *8–9 (M.D. Pa. June 24, 2025) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020)).

When presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Mason*, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. *See Thackara v. Colvin*, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); *Turner v. Colvin*, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); *Connors v. Astrue*, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. *See e.g., Thackara v. Colvin*, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

*Fernandez v. Bisignano*, No. 4:24-CV-412, 2025 WL 1427049, at *10 (M.D. Pa. May 15, 2025). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). "Thus, our inquiry is not whether evidence existed from which the ALJ could have drawn a contrary conclusion, but rather whether substantial evidence existed in the record to support the ALJ's decision to credit or discredit each medical opinion, and whether the ALJ appropriately articulated his decision under the regulations." *Hajdarevic v. Dudek*, No. 3:24-CV-00636, 2025 WL 1004377, at *17 (M.D. Pa. Apr. 3, 2025).

15

3. <u>The ALJ's Conclusion that Dr. Cruciani's Opinion is Not Persuasive is Not Supported by Substantial Evidence.</u>

Plaintiff's treating physician, Dr. Mark Cruciani, provided an opinion on April 23, 2023, that Ms. O. would be limited to lifting or carrying less than ten pounds on both an occasional and frequent basis. (Doc. 8-5 at 34). He opined that she could stand and walk for less than 2 hours per day and could sit for about 2 hours per day. (*Id*.) He added that she would need the opportunity to shift at will from sitting or standing/walking and would need to lie down at unpredictable times during a work shift approximately every 2 hours. (*Id*.). He opined that she could never twist, stoop, crouch, or climb ladders, and could occasionally climb stairs. (*Id*. at 35). He indicated that she could occasionally reach, handle, and push or pull. (*Id*.). He also opined that she should avoid all exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dusts, gasses, poor ventilation, and hazards. (*Id*.). Finally, he anticipated she would miss work due to her impairments more than three times per month. (*Id*)

The ALJ found this opinion not persuasive. (Doc. 8 at 20-21). She indicated that the debilitating findings were not supported by Dr. Cruciani's treatment records. (*Id*.). Specifically, the ALJ noted:

> While the claimant reported pain and numbness and her examination findings included positive Tinel's and Phalen's, positive fibromyalgia trigger points, some decreased range of motion of the left upper extremity,

16

> and spasm, she was intact neurologically with no focal
> deficit and reflexes were symmetrical and muscle
> strength was full (C1F/1, 3; C16F/10, 13). Additionally,
> as indicated above, prior to the period in question, while
> Dr. Cruciani was assessing the claimant with every
> positive trigger point, she was still working at substantial
> gainful activity level (C16D; C16F/28, 30); further, he
> indicating as early as August of 2012 that she was
> incapable of working, but the claimant's own reports
> indicate she worked for several more months (C3E/1;
> C16F/24).

(*Id.*)

Ms. O. argues that the ALJ erroneously found the opinion of her treating physician, Mark Cruciani, not persuasive. (Doc. 11 at 7-13). Plaintiff asserts that Dr. Cruciani's opinion was supported by his objective findings. (*Id.* at 10). Specifically, Plaintiff notes that 14 out of 16 positive trigger points, positive bilateral Tinel's signs, and muscle spasms in the trapezius and severe lumbar spasms. (*Id.*) Plaintiff further asserts that Dr. Cruciani's opinion was consistent with the evidence from other medical sources, specifically citing:

> the opinion of Dr. Stone; EMG testing showing mild to
> moderate carpal tunnel syndrome bilaterally (R. 466-67);
> bilateral shoulder tenderness over distal rotator cuff
> tendons with positive impingement signs including
> positive Hawkins, Neer's and resisted empty can testing
> and range of motion 75% of normal with pain (R. 464);
> ultrasound evidence of bilateral shoulder impingement
> syndrome with moderate to severe tendinosis of the
> supraspinatus tendon with subtle interstitial tearing, and
> the greater tuberosity incompletely clearing under
> acromion on dynamic abduction, consistent with

17

> impingement (R. 503-04); and cervical spondylosis with
> disc bulging at C5-6 greater than C4-5 (R. 464).

(*Id*. at 10-11).  Additionally, Plaintiff states that Dr. Cruciani's opinion was

consistent with the statements and testimony of Ms. O. and the statements of her

husband.  (*Id*. at 11).  Further, she argues that the ALJ's assessment of Dr. Cruciani

was erroneous because "as her treating rheumatologist for many years, he based his

opinion on his longitudinal treatment and observation of [her] over a significant

period of time" and so, his opinion should have been found more persuasive.  (*Id*.).

Further, she argues, his opinion should have been found more persuasive because

he is a specialist in the field of rheumatology.  (*Id*.).

    In response, the Commissioner asserts that substantial evidence supports the

ALJ's evaluation of Dr. Cruciani's opinion.  (Doc. 13 at 11-17).  First, the

Commissioner cites to Dr. Cruciani's records, which the Commissioner argues, do

not support his conclusion.  (*Id*. at 12-13).  Specifically, the Commissioner cites to

Dr. Cruciani's notes indicating that Plaintiff was generally in no acute distress, had

full (5/5) muscle strength, and no neurological deficits (*Id*. citing R. 355, 500, 567-

58, 955, 958, 965).  Ms. O. did not consistently exhibit fibromyalgia trigger points

(*id*. citing R. 955-58) and swelling was not generally documented on examinations,

notwithstanding her complaints of the same (R. 957-58, 965).  Further, the

Commissioner points to Dr. Cruciani's notes that indicate that Ms. O. was able to

perform her activities of daily living, though with difficulty. (*Id*. citing R. 955). Additionally, his notes reflected only conservative treatment, contradicting his finding of disabling limitations. (*Id*. citing R. 955, 958). Accordingly, the Commissioner argues that the ALJ appropriately assessed the supportability factor. Similarly, the Commissioner asserts that the ALJ properly addressed the consistency factor. (*Id*. at 13-14). The Commissioner notes that the ALJ pointed to the Plaintiff's ability to previously work with positive trigger points, her minimal treatment, and examination findings showing that "she exhibited normal tone, no significant tenderness, intact sensation, full strength, and full rotator cuff strength." (*Id*. at 14 citing R. 682). The Commissioner also noted that the ALJ highlighted Ms. O.'s "extensive activities including caring for her grandchildren, driving, shopping in stores, and light cleaning." (*Id*. citing R. at 682). Further, the Commissioner reviewed the ALJ's discussion of Dr. Stone's findings, which the Commissioner argued, were also inconsistent with Dr. Cruciani's opinion. (*Id*.). The Commissioner then pointed out Plaintiff's conservative treatment and failure to pursue ordinary treatment modalities, which the Commissioner argued further supported the ALJ's findings. (*Id*.). The Commissioner specifically noted that Plaintiff declined physical therapy, refused joint injections, and was never referred for surgery (*Id*. at 15 citing R. 465, 504, 1114, 419, 465, 678). As of March, she

had not tried a muscle relaxer, a prescription strength anti-inflammatory, or chiropractic care. (*Id*. at 15 citing R. 464-65).

Finally, the Commissioner asserts that Plaintiff is incorrect in arguing that the opinion of Dr. Cruciani, as her treating physician, was entitled to greater weight, pointing out that the new regulations supplanted prior case law regarding the "treating physician rule." (*Id*. at 16).

In her Reply, Plaintiff again cites to evidence in the Record that she maintains is supportive of and consistent with Dr. Cruciani's opinion. (Doc. 16 at 1-2). She also notes that the ALJ indicated that Ms. O. only saw Dr. Cruciani once during the relevant time period, when in fact, she saw him three times. (*Id*. at 2-3). Plaintiff cites to the second visit, noting that Dr. Cruciani observed Ms. O.'s left arm was swollen and that she had decreased strength to flexion/extension. (*Id*. citing R. at 682, 958). Thus, she argues, the ALJ should have found the opinion of Dr. Cruciani persuasive.

Initially, we note that the Commissioner is correct that the Third Circuit's "treating physician rule" does not apply to this claim. The rules for weighing physician opinions were radically revised by 20 C.F.R. § 404.1520c (the "New Regulation"), which gives no preferential treatment to the opinions of treating physicians, and instead states that no specific evidentiary weight is given to opinions from any physician. *R.D. v. Comm'r of Soc. Sec.*, No. CV 22-3591

(SRC), 2025 WL 2047241, *1 (D.N.J. July 22, 2025). This is a major change from preexisting Third Circuit law, but the New Regulation is effective only for Social Security claims filed on or after March 27, 2017. *Id*. Plaintiff filed her claim for disability benefits on January 31, 2018. Accordingly, the New Regulation and not the "treating physician rule," controls the analysis.

Thus, we must consider whether the ALJ's assessment of Dr. Cruciani is consistent with the New Regulation and supported by substantial evidence. Consistent with the New Regulation, the ALJ considered and discussed the supportability and consistency of Dr. Cruciani's opinion. (Doc. 8 at 20-21); *see also Fallin*, 2025 WL 1749654, at *8-9 ("[t]he two most important factors for determining the persuasiveness of medical opinions are consistency and supportability") (internal citation omitted). In discussing the supportability of Dr. Cruciani's opinion, the ALJ acknowledged that Dr. Cruciani's records indicated that Plaintiff reported pain and numbness and that "her examination findings included positive Tinel's and Phalen's, positive fibromyalgia trigger points, some decreased range of motion of the left upper extremity and spasm." (Doc. 8 at 20-21). However, the ALJ noted that Dr. Cruciani's records also indicated that Plaintiff was "intact neurologically with no focal deficit and reflexes were symmetrical and muscle strength was full." (*Id*.). The ALJ also stated that prior to the period in question, Dr. Cruciani's records show that he found "every positive

21

trigger point," yet Plaintiff was still "working at substantial gainful activity level." (*Id*. at 21).   Further, the ALJ stated that Dr. Cruciani opined as early as August 2021 that Plaintiff was incapable of working, but she continued working for several months.  (*Id*.).  Accordingly, the ALJ determined that Dr. Cruciani's opinion was not fully supported by his treatment records.

As Plaintiff points out, however, elsewhere in the ALJ's opinion, the ALJ incorrectly stated that during the relevant time period, Plaintiff had only one visit with Dr. Cruciani for fibromyalgia on February 21, 2018.  (*See* Doc. 16 at 2).[2]  In fact, Plaintiff had three visits with Dr. Cruciani during the relevant time period. (*See* Doc. 7-7 at 2-4).  She saw him on February 27, 2017, August 23, 2017, and February 21, 2018.  The ALJ noted, as part of the basis of her determination that the debilitating limitations assessed by Dr. Cruciani were not supported by his

---

[2] Plaintiff raised this argument for the first time in her Reply Brief.  (*Compare* Doc. 11 *with* Doc. 16).  We are mindful that we need not consider arguments raised for the first time in a reply brief.  *See Baptiste v. Morris*, No. 3:18-cv-1484, 2020 WL 2745739, *6 (May 27, 2020) ("It is well established that a court may decline to consider arguments raised for the first time in a reply brief") (citing *Garza v. Citigroup Inc.*, 881 F.3d 277, 284-85 (3d Cir. 2018)).   However, in reviewing the ALJ's decision, we are required to independently "scrutinize the entire record and to reverse or remand if the [Commissioner']s decision is not supported by substantial evidence."  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).  Accordingly, we must review all of Dr. Cruciani's records to determine whether substantial evidence supports the ALJ's determination that his opinion is not persuasive.

records, that Dr. Cruciani's records indicated that Plaintiff had full muscle strength. (Doc. 8 at 20-21). The record of Plaintiff's February 21, 2018 visit with Dr. Cruciani, which the ALJ specifically referenced, does indicate "5/5 strength." (Doc. 7-7 at 2). However, in the documentation from Plaintiff's February 27, 2017, appointment with Dr. Cruciani, which the ALJ does not acknowledge, Dr. Cruciani indicates, "decreased strength of the left upper extremity to flexion/extension" and "left w/weakness to thumb/little finger abduction." (Doc. 7-7 at 4). Further, the records from the two visits which were not referenced by the ALJ discuss the swelling of Plaintiff's left arm. (*See id.* at 3-4). On February 27, 2017, Dr. Cruciani indicated, "[l]eft arm from neck all the way down arm swollen and painful x 3 months, PCP did [ultrasound] to [rule out] blood clot and gave 2 rounds of steroids, no relief, no known cause or injury." (*Id.* at 4). He went on to say, "left arm is 13.5" around the biceps/triceps, right arm is 12.5, decreased strength of the left upper extremity to flexion/extension." (*Id.*). Similarly, on August 23, 2017, Dr. Cruciani noted that Plaintiff "states left upper extremity swells to point can't even use it." (*Id.* at 3). He then noted that his exam revealed "14" upper left arm and only 13" right." (*Id.*).

The finding of decreased strength contradicts one of the bases for the ALJ's finding that Dr. Cruciani's records did not support his opinion. Additionally, the documented findings regarding Ms. O.'s left upper extremity swelling may be

pertinent to the limitations which Dr. Cruciani assessed.  Specifically, Dr. Cruciani

opined that Ms. O. would be limited to lifting or carrying less than ten pounds on

an infrequent or occasional basis and that she could only occasionally push or pull

or handle.  (Doc. 8-5 at 34).  Those limitations were not adopted by the ALJ in her

RFC or included in the hypothetical posited to the VE.  (*See* Doc. 8 at 13).  Rather,

the ALJ's RFC included no limitations with respect to the amount Ms. O. could

regularly or infrequently lift and found that she could frequently push and pull with

her upper extremities, and that she could frequently handle bilaterally.  (*Id.*).

While the ALJ may choose to credit certain medical opinions over others,

she "cannot reject evidence for no reason or for the wrong reason."  *Mason*, 994

F.2d at 1066.  When an ALJ premises a determination on a mistake or factual

error, it cannot be said that substantial evidence supports the conclusion.  *See*

*Gleason v. Saul*, No. 19-cv-03713, 2020 WL 1975378, *6 (Apr. 24, 2020) (citing

*Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) ("This

mistake, and others like it, indicate that the ALJ's decision to discredit [a medical

opinion] was not supported by substantial evidence.")); *see also Chiglinsky v.*

*O'Malley*, No. 1:23-cv-01162, 2024 WL 4228165, *9-11 (M.D. Pa. Sept. 18, 2024)

(ALJ's conclusion that medical opinion was unpersuasive not supported by

substantial evidence where it was based on "mischaracterization" of that

physician's records); *Rodriguez v. Colvin*, No. 16-4322, 2018 WL 1474073, *4–5

24

(E.D. Pa. March 23, 2018) ("Courts have concluded that substantial evidence cannot be based on factual errors."); *Coniglio v. Colvin*, No. 15-40, 2016 WL 4385870, at *13 (E.D. Pa. July 26, 2016) ("Where, as here, the ALJ's decision to reject the opinion of a treating physician is predicated on factual mistakes or mischaracterizations of evidence, that decision is not supported by substantial evidence.").

Based upon the ALJ's statement that Plaintiff only had one visit with Dr. Cruciani during the relevant time period, we can only assume that the ALJ did not consider the records of the other two visits on February 27, 2017 and August 23, 2017, in reaching her conclusion that the opinion was not supported by the records. Because these records contradict part of the ALJ's rationale for her finding regarding supportability and include additional findings bearing directly on some of the limitations assessed by Dr. Cruciani, we are constrained to conclude that the ALJ's conclusion was not supported by substantial evidence. It is true that the ALJ also concluded that Dr. Cruciani's opinion was inconsistent with other findings in the Record. (Doc. 8 at 21-21). However, we cannot be sure of the weight the ALJ placed upon her incorrect assessment of Dr. Cruciani's records in ultimately determining that Dr. Cruciani's opinion was not persuasive. *See, e.g.*, *Chiglinsky*, 2024 WL 4228165, *9-11 (noting that while the ALJ found opinion unpersuasive for other reasons, the court "could not say that [the] mischaracterization did not

color his reasoning as a whole.").  Had the ALJ found that Dr. Cruciani's opinion

was supported by his records, she may have found his opinion more persuasive and

may have adopted more limitations, indicated in his opinion, which may have

resulted in a finding of disability.

### 4.  Remaining Arguments

Because it will be ordered that the decision of the Commissioner be vacated

and remanded for further consideration so that the ALJ may properly consider Dr.

Cruciani's records in undertaking the analysis as to the supportability of his

opinion, Plaintiff's remaining arguments need not be addressed.  "A remand may

produce different results on these claims, making discussion of them moot."  *Burns*

*v. Colvin*, 156 F.Supp.3d 579, 598 (M.D. Pa. 2016).  Evaluation of Plaintiff's

additional contentions would be futile given that the ALJ's reconsideration of

Plaintiff's limitations may yield a different result.

### 5.  REMEDY

The Court has authority to affirm, modify or reverse the Commissioner's

decision "with or without remanding the case for rehearing."  42 U.S.C. §

405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991).  However, the Third

Circuit has advised that benefits should only be awarded where "the administrative

record of the case has been fully developed and when substantial evidence in the

record as a whole indicates that the claimant is disabled and entitled to

benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).  *See generally Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").  Because the ALJ's decision was not supported by substantial evidence, further development of the record is required and that the decision of the Commissioner must be vacated and the case remanded.

**6.  CONCLUSION**

Based on the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision will be **vacated** and the case will be **remanded** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence.

An appropriate Order is filed simultaneously with this Memorandum.

**Dated:** September 19, 2025                    *s/ Leo A. Latella*
                                                 **LEO A. LATELLA**
                                                 **United States Magistrate Judge**